**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELVIS PRESLEY ENTERPRISES, LLC,
ELVIS MUSIC INC. and WHITE HAVEN
MUSIC, INC.

     Plaintiffs,

 -*against*-

CARLIN MUSIC CORPORATION,

     Defendant.

**Civil Action No. 06-cv-13740 (RWS)**

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiffs Elvis Presley Enterprises, LLC, Elvis Music Inc., and White Haven Music, Inc.

through their undersigned attorneys, Troutman Sanders LLP, hereby complain of defendant as

follows:

**NATURE OF THE ACTION**

By this action, plaintiffs, the owners, in whole or in part, of the copyrights to

approximately 650 musical compositions, the majority of which were recorded by one of the

world's most popular recording artists and perhaps the largest cultural icon of the Twentieth

Century -- Elvis Presley ("Presley") -- seek protection and relief related to the mismanagement

of plaintiffs' music publishing catalogs by defendant Carlin Music Corporation ("Carlin") and

seek to prevent Carlin's continued infringement of copyrights to musical compositions owned by

plaintiffs.   For over forty (40) years, Carlin and its wholly-owned subsidiaries have been contractually obligated to administer musical compositions owned, in whole, or in part by plaintiffs.   As a result of this relationship, Carlin and Carlin's owner, Freddy Bienstock ("Bienstock") have realized an overwhelming windfall to both their finances and reputation.   As described more fully in this Complaint, Carlin has utterly failed to live up to its various agreements with, and responsibilities to plaintiffs.   Even worse, Carlin has engaged in pervasive self dealing and double commissioning at plaintiffs' expense, causing plaintiffs to lose hundreds of thousands of dollars.   Because Carlin has failed to remedy its wrongdoing despite plaintiffs' repeated requests, plaintiffs have been forced to bring this lawsuit to protect their rights.

I.   **Parties**

*1.*   Plaintiff Elvis Presley Enterprises, LLC ("EPE") is a limited liability corporation organized and existing under the laws of the state of Delaware.

*2.*   Plaintiff Elvis Music, Inc. ("Elvis Music") is a corporation organized and existing under the laws of the state of New York.

*3.*   Plaintiff White Haven Music, Inc. ("White Haven") is a corporation organized and existing under the laws of the state of New York.

*4.*   Upon information and belief, Carlin is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 126 East 38th Street, New York, New York 10016.

2

II.    **Jurisdiction and Venue**

5.     This is a civil action for: (1) breaches of contract, arising under the laws of the State of New York; (2) declaratory judgment under the laws of the State of New York and the laws of the United Kingdom; (3) breach of fiduciary duty under the laws of the State of New York; (4) copyright infringement, arising under the laws of the United States, 17 U.S.C. § 101 *et seq.*; (5) unfair competition, arising under the laws of the United States, 15 U.S.C. § 1051 et seq.; and (6) infringement of foreign copyrights, under the laws of various foreign territories.

6.     Subject matter jurisdiction over the claims brought pursuant to the U.S. Copyright Act and Lanham Act exists pursuant to 28 U.S.C. §§ 1331 and 1338.  The remaining causes of action are related to the foregoing copyright and unfair competition causes of action and, as such, subject matter jurisdiction is conferred pursuant to 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Carlin, as Carlin resides in and is a citizen of New York, has undertaken significant commercial activity in New York, regularly transacts business in New York, and derives significant revenue from New York.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Carlin resides in this judicial district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

3

III.   **Overview of the Action**

*9.*     This is a dispute over the administration and exploitation of the musical compositions owned, in whole or in part, by plaintiffs.   Each of these musical compositions can be classified into one of two subsets, defined below as the *"Gladys/EPM Catalog"* (musical compositions created prior to 1973 including such hits as *"All Shook Up,"* *"Love Me Tender,"*  *"Can't Help Falling in Love (with You),"* *"Hound Dog,"* and  *"(Let Me Be Your) Teddy Bear"*), and the *"White Haven/Elvis Music Catalog"* (musical compositions created in 1973 and later which include many gospel and country songs recorded by Presley).   In this lawsuit, EPE's claims relate to the *Gladys/EPM Catalog* and Elvis Music's and White Haven's claims relate to the *White Haven/Elvis Music Catalog*.   Relevant compositions of each catalog are included at Exhibits 1 and 5 hereto.

*10.*     As is more fully set forth below, Carlin and its principal, Bienstock, have long standing relationships with Presley, EPE, Elvis Music and White Haven – an intricate set of relationships spanning in excess of forty (40) years with respect to Carlin, and in excess of fifty (50) years with respect to Bienstock.

*11.*     Throughout this relationship, Bienstock and Carlin have functioned in a variety of capacities on behalf of plaintiffs, notably: (i) for almost forty (40) years, Carlin has been the administrator of the *Gladys/EPM Catalog* in the United Kingdom and the Republic of Ireland; (ii) for more than thirty (30) years, Carlin has acted as the worldwide administrator for the *White Haven/Elvis Music Catalog*; (iii) for more than thirty (30) years Bienstock was a corporate officer of White Haven and Elvis Music; and (iv)

4

Bienstock has been a ten percent (10%) stockholder of White Haven and Elvis Music since their inception.

*12.*     Essentially, in addition to seeking declaratory relief that Carlin's contracts with EPE is terminated, this complaint pleads five (5) related categories of claims: (i) Carlin has breached an April 9, 1992 agreement, pursuant to which Carlin administers the *Gladys/EPM Catalog* in the United Kingdom and Ireland (the "1992 Settlement Agreement"); (ii) Carlin has breached two 1973 Contracts with Elvis Music and White Haven, pursuant to which Carlin administers the *White Haven/Elvis Music Catalog* (collectively, the "1973 Contracts"); (iii) Carlin has breached its fiduciary duties to all plaintiffs; and (iv) Carlin has infringed plaintiffs' U.S. and international copyrights; and (v) Carlin has engaged in unfair competition.  More specifically:

*(1)*     The 1992 Settlement Agreement: Pursuant to the 1992 Settlement Agreement Carlin administers the *Gladys/EPM Catalog* in the United Kingdom and Ireland. Carlin has breached and/or exceeded it rights under the 1992 Settlement Agreement by: (i) failing to render proper accountings and payments, including, *inter alia*, by failing to remit to EPE 75% of monies generated by the exploitation of the musical compositions in the *Gladys/EPM Catalog* as required under the agreement; (ii) failing to properly administer the *Gladys/EPM Catalog*, including, *inter alia*, by failing to update its administrative records and determine the commencement of copyright renewal terms for salient musical compositions; (iii) authorizing exploitations of musical compositions in the *Gladys/EPM Catalog* specifically precluded by the 1992 Settlement Agreement, such as authorizing

5

"grand performance rights" and licensing musical compositions to third parties as part of dramatic stage productions; and (iv) refusing to acknowledge the reversion to EPE (as the successor in interest to Presley's authorship interest) of Presley's authorship rights to certain musical compositions under British law.

*(2)* <u>The 1973 Contracts:</u>  Pursuant to the 1973 Contracts, Carlin administers the *White Haven/Elvis Music Catalog* in all territories outside of the United States and Canada.  Carlin has breached the 1973 Contracts by: (i) failing to render proper accountings and payments to White Haven and Elvis Music; (ii) failing to properly administer the *White Haven/Elvis Music Catalog*, including extending or renewing various sub-publishing arrangements to the detriment of White Haven and/or Elvis Music, failing to keep accurate books and records, and even failing to keep an accurate list of musical compositions in the *White Haven/Elvis Music Catalog*; and (iii) engaging in systematic "self-dealing" with related companies, the retention of excessive administration fees, and "double" commissioning certain sources of income.

*(3)* <u>Breach of Fiduciary Duties:</u>  As detailed below, in establishing the relationships at issue here, Carlin and Bienstock have continuously held themselves out as (and were expected to be) extremely loyal, trustworthy and acting only in good faith.  Because of the many hats they wear – as administrators, owners, shareholders and directors – Carlin and Bienstock were legally bound to subjugate their personal interests to their duty to plaintiffs. Carlin

6

and Bienstock failed to do so – engaging in self dealing, mismanagement, and a wholesale breach of the fiduciary relationship.

    *(4)*    <u>Copyright Infringement</u>: Carlin has infringed plaintiff's copyrights – both in the United States and abroad – by (i) breaching the 1992 Settlement Agreement and 1973 Contracts, (ii) exploiting rights it does not have (e.g., grand performance rights), and (iii) claiming rights to copyrights that have reverted to EPE (as Presley's successor in interest to his authorship interest).

*13.*    Because of the sinuous and intricate nature of the relationships, the factual background giving rise to the causes of action are set forth such that the facts relative to the *Gladys/EPM Catalog*, which eventually gave rise to the 1992 Settlement Agreement and its breach, are laid out in full first in Section III, *infra*. The facts relative to the *White Haven/Elvis Music Catalog* and the breaches by Carlin of the 1973 Contracts are laid out in Section IV, *infra*.

## III.   *Gladys/EPM Catalog* - **Facts Concerning the 1992 Settlement Agreement**

### A.   **Formation of the *Gladys/EPM Catalog***

*14.*    Upon information and belief, in 1955, shortly after Presley's music career commenced, Presley joined forces with the music publishing team of Julian and Jean Aberbach (the "Aberbachs"). During that time, the Aberbachs owned a music publishing company called Hill & Range Songs, Inc. ("Hill & Range").

*15.*    During the relevant period, the duties and acts of a music publishing company, such as Hill & Range were manifold. First, after the music publishing company's staff

7

writers wrote a composition, the music publishing company would present the composition to an artist to record, with the intent of creating a "hit record" and generating sales and airplay. For example, Hill & Range supplied Presley with various musical compositions written by Hill & Range's staff writers and others, including the famous songwriting team of Jerry Lieber and Mike Stoller who were responsible for such hits as "*Hound Dog*" and "*Jailhouse Rock*". Once a musical composition was recorded, the music publishing company would thereafter administer the composition by supervising the collection and payment of royalties, licensing the composition for use in other media such as movie soundtracks and television commercials, administering sheet music and performance rights, and handling copyright registration and ownership matters.

*16.* Upon information and belief, in 1955 and 1956, Presley, the Aberbachs, and Presley's manager, Colonel Tom Parker ("Parker") set up two New York corporations, Gladys Music, Inc. ("Gladys") and Elvis Presley Music, Inc. ("EPM"), to serve as the copyright owners of certain musical compositions recorded by Presley. EPM and Gladys were each owned by Presley (25%), the Aberbachs (50%) and Parker (25%).

*17.* Hill & Range acted as the music publisher for the musical compositions that were owned by EPM and Gladys. Upon information and belief, pursuant to agreements with Hill & Range in 1955 and 1956, musical compositions recorded by Presley were assigned to either EPM or Gladys depending on the performing rights organization with which the applicable songwriter was affiliated. Simply put, if a songwriter was affiliated with BMI (Broadcast Music, Inc.), the composition was assigned to EPM, and if the songwriter was

8

affiliated with ASCAP (American Society of Composers, Authors and Publishers) the composition was assigned to Gladys.

*18.*     With respect to compositions written or co-written by Presley (including such hits as, "*All Shook Up*," "*Don't Be Cruel*," and "*Love Me Tender*"), Presley assigned such compositions to EPM.

**B.     The Initial Relationship between Bienstock, Presley, Gladys and EPM**

*19.*     Upon information and belief, in the early 1950's the Aberbachs hired Bienstock, who was their first cousin, as an employee of Hill & Range.

*20.*     Upon information and belief, prior to being hired by the Aberbachs, Bienstock was a stock room attendant for another music publishing company called Chappell Music ("Chappell").

*21.*     One of Bienstock's tasks was to travel and hand deliver to Presley musical compositions for Presley's consideration.

*22.*     At various times throughout the 1950's and 1960's, Bienstock, as an employee of Hill and Range, would attend Presley's recording sessions in Memphis, Nashville, Hollywood and New York in order to deliver these musical compositions to Presley.

*23.*     According to Bienstock, in addition to being an employee of Hill & Range, he also was the *only* salaried employee of EPM and Gladys.  Thus, in addition to being paid as an employee of Hill & Range, the company charged with administering the *Gladys/EPM Catalog*, Bienstock somehow convinced Presley, Parker and the Aberbachs that he should also be paid by Gladys and EPM.  Thus, from very early on in the

9

relationship, Bienstock was able to manipulate circumstances to function in various roles – and earn a separate income for each such role – in connection with Presley and Presley's compositions.

**C.    Administration of the *Gladys/EPM Catalog* in the United Kingdom**

*24.*    Upon information and belief, in 1955 the Aberbachs formed Aberbach (London) Limited and Belinda (London) Limited (collectively "Belinda"), to act as music publishers for the territories of the British Commonwealth (excluding Australia, Canada, New Zealand and South Africa) and the Republic of Ireland.

*25.*    In or around 1956, Both Gladys and EPM entered into agreements with Belinda whereby, for the first term of copyright (i.e., 28 years from the publication of the musical composition), Belinda would administer the *Gladys/EPM Catalog* in the territories of the British Commonwealth (excluding Australia, Canada, New Zealand and South Africa) and the Republic of Ireland.    Thus, when a musical composition was exploited in the salient territory, Belinda would extract an administration fee and send a statement and payment to Hill & Range, the music publisher of the *Gladys/EPM Catalog*.    Hill & Range would, in turn, account to and pay EPM and Gladys.

*26.*    Upon information and belief, Bienstock created Carlin in 1966.

*27.*    Upon information and belief, also in 1966, Bienstock and Carlin purchased Belinda from the Aberbachs.

*28.*    Upon information and belief, all of Belinda's rights and copyrights were liquidated and transferred to Carlin.    As a result, Carlin became the administrator of the

10

*Gladys/EPM Catalog* in the territories of the British Commonwealth (excluding Australia, Canada, New Zealand and South Africa) and the Republic of Ireland. Thus, similar to Gladys and EPM's relationship with Belinda, when a musical composition was exploited in the salient territory, Carlin would extract an administration fee (50% of the receipts) and send a statement and payment to Hill & Range, and Hill & Range would, in turn, account to and pay EPM and Gladys.

**D.     Ownership of the *Gladys/EPM Catalog* After 1972**

*29.*     On or about September 15, 1972, EPM and Gladys assigned their assets (including the *Gladys/EPM Catalog*) to their shareholders in accordance with their shareholdings (e.g., twenty-five percent (25%) to Presley, twenty-five percent (25%) to Parker, and fifty percent (50%) to the Aberbachs) and EPM and Gladys were thereafter dissolved. Hill & Range continued to act as the music publisher for the *Gladys/EPM Catalog*. Thus, instead of sending accountings and payments to EPM and Gladys, Hill & Range sent accountings and payments directly to Presley, Parker and the Aberbachs.

*30.*     After Presley's death in 1977, Presley's rights and interests in the *Gladys/EPM Catalog* were bequeathed to the Elvis Presley Residuary Trust.

*31.*     In the early 1980's Parker assigned his interests in the *Gladys/EPM Catalog* to the Elvis Presley Residuary Trust.

*32.*     In 1993, the Elvis Presley Residuary Trust assigned to the Promenade Trust, *inter alia*, all of its rights in and interests to the *Gladys/EPM Catalog*.

NEWYORK01 1161805v2 034078-000016

*33.*     In 2005, the Promenade Trust conveyed all of its rights in an interest to the *Gladys/EPM Catalog* to plaintiff EPE.

*34.*     Presently, EPE owns a fifty percent (50%) interest in the *Gladys/EPM Catalog*. The remaining fifty percent (50%) interest in the *Gladys/EPM Catalog* is owned by the heirs of the Aberbachs (the "Aberbach Heirs").

**E.     Prior Disputes Concerning the *Gladys/EPM Catalog***

*35.*     Upon information and belief, by agreement dated July 1, 1975, Hill and Range assigned its rights to administer the *Gladys/EPM Catalog* to Chappell.

*36.*     When Presley died in 1977, the compositions in the *Gladys/EPM Catalog* all were in their first term of copyright protection in the United States.

*37.*     Beginning in 1982 – twenty-eight (28) years after copyrights to the first compositions in the *Gladys/EPM Catalog* were secured – the compositions in the *Gladys/EPM Catalog* began to enter their copyright renewal term.

*38.*     As the music publisher of the *Gladys/EPM Catalog*, Chappell was responsible for ensuring that all of its sub-publishers, including Carlin, were: (a) properly exploiting the *Gladys/EPM Catalog*, (b) properly accounting for such exploitation and (c) only exploiting those compositions to which it had rights.   Thus, with regard to Carlin, Chappell's obligations included both: (a) monitoring the contractual basis upon which Carlin administered the *Gladys/EPM Catalog*, and (b) recapturing rights to musical compositions in the *Gladys/EPM Catalog* entering their renewal term.

NEWYORK01 1161805v2 034078-000016

*39.* For the period 1984 through 1988, Bienstock was the president of Chappell. Thus, with regard to the *Gladys/EPM Catalog*, Chappell, under Bienstock's guide, was responsible for monitoring Bienstock's company, Carlin.

*40.* Upon information and belief Chappell, under Bienstock's direction, made little effort to ensure that Carlin's exploitation of the *Gladys/EPM Catalog* was within the scope of Carlin's rights.

*41.* In 1987, the Elvis Presley Residuary Trust and the Aberbachs determined that Chappell, under Bienstock's direction, failed to recapture from Carlin rights to the compositions in the *Gladys/EPM Catalog* upon the commencement of the renewal term of U.S. copyrights in such musical compositions. Thus, Chappell allowed Carlin to continue claiming administration rights in musical compositions in the *Gladys/EPM Catalog* that had entered their renewal copyright periods, and for which Carlin no longer had rights. Further, Chappell failed to ensure that Carlin was properly accounting for its exploitation of the *Gladys/EPM Catalog*. Simply put, Chappell, and more particularly Bienstock, as president of Chappell, failed to enforce rights against Carlin, which was wholly owned by Bienstock.

*42.* As a result of Carlin's misconduct, the Elvis Presley Residuary Trust and the Aberbachs demanded that Carlin: (i) cease exploiting compositions in the *Gladys/EPM Catalog* that had reached their renewal term; (ii) disgorge improperly retained revenues for improper exploitation; and (iii) properly account for exploitation of those compositions to which Carlin still had rights (i.e. those compositions in the *Gladys/EPM Catalog* that had not yet reached their renewal term).

NEWYORK01 1161805v2 034078-000016

*43.*     Carlin and Bienstock then engaged in a series of specious responses, all of which were geared at delaying resolution.  Interestingly, Bienstock's first response was that, with respect to the *Gladys/EPM Catalog*, Carlin's relationship was not with the Elvis Presley Residuary Trust or the Aberbachs – but rather only was with Chappell.  Carlin also asserted a variety of contradictory and ever shifting contractual arguments.

*44.*     In 1991, once it became apparent that Carlin was not going to address issues on the merits, the Elvis Presley Residuary Trust and the Aberbachs brought an action against Carlin in the United Kingdom.  In response, Carlin brought an action in New York Supreme Court, New York County (Index No. 27345/91) (the "New York Action") against the Elvis Presley Residuary Trust and the Aberbachs.

**F.**     **The 1992 Settlement Agreement**

*45.*     On April 9, 1992 the Elvis Presley Residuary Trust, the Aberbachs and Carlin entered into the 1992 Settlement Agreement, a copy of which is attached hereto as Exhibit 2.

*46.*     The 1992 Settlement Agreement disposed of all pending disputes related to the *Gladys/EPM Catalog* between the Elvis Presley Residuary Trust and the Aberbachs, on the one hand, and Carlin on the other.

*47.*     The 1992 Settlement Agreement assigned to Carlin certain rights to administer compositions in the *Gladys/EPM Catalog* for the United Kingdom and Ireland.  Under the 1992 Settlement Agreement, Carlin's administration rights were explicitly limited to: (i) granting mechanical licenses, (ii) granting small performing rights, (iii) granting

14

licenses for use in commercials, (iv) granting licenses for printed copies of the compositions, and (v) granting synchronization licenses.

**48.**   Pursuant to paragraph 4 of the 1992 Settlement Agreement, any right not granted to Carlin was specifically reserved to EPE and the Aberbachs, including the right to grant worldwide licenses with respect to the musical compositions.

**49.**   The 1992 Agreement specifically does not grant Carlin the right to enter into grand performance right agreements with third parties with respect to "dramatico-musical" works.

**50.**   Pursuant to paragraphs 3 and 4 of the 1992 Settlement Agreement, Carlin is required to seek prior written authorization for licensing compositions in the *Gladys/EPM Catalog* for use in commercials or motion pictures.

**51.**   Pursuant to paragraph 5 of the 1992 Settlement Agreement, once compositions enter the renewal term of U.S. copyright, Carlin is required to render accountings and pay to The Elvis Presley Residuary Trust (now EPE as successor to the Trust) and the Aberbachs, seventy-five percent (75%) of the money generated by Carlin's exploitation of the compositions in the *Gladys/EPM Catalog* (as opposed to the 50% royalty that Carlin was paying prior to the 1992 Settlement Agreement).

**52.**   Pursuant to paragraph 12 of the 1992 Settlement Agreement, the Settlement Agreement can be terminated if, *inter alia*, Carlin materially breaches the terms thereof.

NEWYORK01 1161805v2 034078-000016

**G.    Carlin's Violation of the 1992 Settlement Agreement –
        Improper Accountings and Payments**

*53.*    All of the compositions in the *Gladys/EPM Catalog* entered their U.S. renewal

copyright term commencing, at the latest, in 2001 and as set forth above, pursuant to

paragraph 5 of the 1992 Settlement Agreement, Carlin is required to account for and pay

to EPE and the Aberbachs seventy-five percent (75%) of the income generated by the

compositions in the *Gladys/EPM Catalog.* In or around 2005, EPE and the Aberbach

Heirs were concerned that Carlin was failing to proffer proper accountings under the

1992 Settlement Agreement.  Likewise, EPE and the Aberbach Heirs became concerned

that Carlin was failing to remit proper payment of royalties pursuant to the 1992

Settlement Agreement.

*54.*    EPE and the Aberbach Heirs therefore exercised their audit rights pursuant to

paragraph 7 of the 1992 Settlement Agreement.

*55.*    Pursuant to a Notice of Audit, dated August 1, 2005, on behalf of EPE and the

Aberbach Heirs, Rafael Attar (the "Auditor") conducted an audit of Carlin's books and

records with respect to the *Gladys/EPM Catalog* for the period of July 1, 1999 through

June 30, 2005.  The Audit Report was limited to the books and records provided by

Carlin.

*56.*    The Auditor prepared an audit report (the "Audit Report"), a copy of which is

attached hereto as Exhibit 3.

*57.*    The Audit Report confirms that Carlin failed to comply with Paragraph 5 of the

1992 Settlement Agreement.  Specifically, the Audit Report indicates that, with respect to

16

various compositions in the *Gladys/EPM Catalog*, Carlin has been accounting and paying EPE and the Aberbach Heirs at a rate of only fifty percent (50%) of the income generated instead of seventy five percent (75%) of the income generated as required under the 1992 Settlement Agreement.

*58.*    The Audit Report also confirms that Carlin has failed to pay the correct rates for "print" uses of the compositions in the *Gladys/EPM Catalog*, as Carlin is retaining a fee of 33⅓% instead of twenty-five percent (25%) as required under the 1992 Settlement Agreement.

*59.*    The accounting and books provided by Carlin detail third party exploitation of the musical compositions in the *Gladys/EPM Catalog*. This third party exploitation includes musical products (e.g. CDs), television and radio commercials, television shows and motion pictures (such as feature films).

*60.*    As the music publisher, Carlin is required to: (i) collect income for all such exploitations; (ii) account for all such exploitations to EPE; and (iii) properly pay EPE for all such exploitations. Upon information and belief, there are third party exploitations of the musical compositions in the *Gladys/EPM Catalog* for which Carlin has neither: (i) accounted to EPE for those exploitations; nor (ii) paid EPE for those exploitations.

17

**I.     Carlin's Violation of the 1992 Settlement Agreement –
        Improper Administration and Improper Claims**

*61.*    Carlin has purposefully failed to use any modicum of effort to keep accurate administration records of musical compositions in the *Gladys/EPM Catalog*.

*62.*    The Audit Report indicates that Carlin submitted to the Auditor a list of thirty-four (34) musical compositions for which it did not know the copyright registration date (and hence pledged ignorance of the date of the commencement of the copyright renewal term).

*63.*    The Audit Report demonstrates that, with respect to at least sixteen (16) of the thirty-four (34) musical compositions, the copyright dates were easily determined by "reference to easily accessible information".    Nonetheless, Carlin – and certainly Bienstock, who testified that he was intricately involved in Presley's recording career and has continually been involved in the administration of the *Gladys/EPM Catalog* – is aware that the *Gladys/EPM Catalog* contains only musical compositions created up to 1973, and that all of the compositions would be in their renewal term by, at the latest, 2001.

*64.*    Carlin's purposeful failure to determine the copyright dates (including copyright renewal dates) of musical compositions in the *Gladys/EPM Catalog* was Carlin's putative basis for continuing to pay itself a fee of fifty percent (50%) of the income generated by certain compositions in the *Gladys/EPM Catalog*, instead of paying itself a fee of twenty-five percent (25%) as mandated by the 1992 Settlement Agreement.

NEWYORK01 1161805v2 034078-000016

*65.*    In addition to administering the ministerial details of the copyrights, as indicated above, Carlin also is responsible for authorizing and monitoring third party exploitations of the compositions in the *Gladys/EPM Catalog*.  As also indicated above, one type of such third party exploitation is synchronization of the compositions in audiovisual works, such as motion pictures, television shows and commercials.

*66.*    Paragraph 4 of the 1992 Settlement Agreement requires Carlin to obtain from EPE and the Aberbachs written consent prior to granting a synchronization license or any license permitting advertising or promoting any product, service, person or institution. Upon information and belief, despite the specific provisions in the 1992 Settlement Agreement, Carlin has authorized film and commercial usage of the compositions in the *Gladys/EPM Catalog* without EPE's written permission.

**J.    Carlin's Violation of the 1992 Settlement Agreement – Grand Rights**

*67.*    Paragraph 3 of the 1992 Settlement Agreement specifically delineates the categories of rights regarding to the *Gladys/EPM Catalog* being granted to Carlin. Paragraph 3 of the 1992 Settlement Agreement does not include grand performance rights – that is use of the musical compositions in a dramatico-musical performances.

*68.*    Paragraph 4 of the 1992 Settlement Agreement states that "all rights in the [*Gladys/EPM Catalog*] not specifically mentioned in paragraph 3 herein are reserved to [EPE and the Aberbachs]."  Despite the language in the 1992 Settlement Agreement, Carlin has attempted to license grand performance rights to the musical compositions in the *Gladys/EPM Catalog*.

NEWYORK01 1161805v2 034078-000016

*69.*   Elvis:   The Musical:   In 1996, Carlin informed EPE of a proposed stage production entitled "Elvis: The Musical" to be produced by Bill Kenwright Ltd. ("Kenwright"). David Japp, the Managing Director of Carlin took the position that as the administrator of the *Gladys/EPM Catalog* in the United Kingdom, Carlin possessed all necessary rights to grant the licenses necessary for the production in those territories. EPE disagreed with Carlin's assessment, noting that pursuant to the 1992 Settlement Agreement, grand rights were not included in the grant of rights to Carlin.   After approving the use of the musical compositions as embodied in the musical, The Elvis Presley Residuary Trust and the Aberbachs decided to enter into a direct agreement with Kenwright for use of the compositions in the musical.   Under the terms and conditions of the license agreement with Kenwright, Carlin is not a grantor of rights but is merely referenced as the "agent" of Elvis Presley Music/Gladys Music designated to receive the royalties on behalf of EPE and the Aberbachs.

*70.*   All Shook Up: The show "*All Shook Up*" is a musical comedy featuring songs made famous by Presley with an original book by playwright Joe DiPietro. The show opened at the Cadillac Theater in Chicago in December 2004 and on Broadway in March 2005, where it ran for several months before closing.   *All Shook Up* utilizes certain compositions in the *Gladys/EPM Catalog*, including, *inter alia*, "*All Shook Up*," "*Burning Love*" and "*Don't Be Cruel*".   The producers of *All Shook Up* sought worldwide licenses for use of certain musical compositions in *All Shook Up*.   Upon information and belief, Carlin represented to the producers of *All Shook Up* that it had the right to grant such licenses with respect to performances of *All Shook Up* in the United

20

Kingdom. Carlin made this assertion despite the fact that under the 1992 Settlement Agreement, Carlin did not have the right to license grand rights.

71.   <u>This Is Elvis</u>:  Upon information and belief, another producer sought to produce the musical dramatic show titled *"This is Elvis,"* a show based on a 1981 motion picture of the same name which show utilized certain compositions from the *Gladys/EPM Catalog*. EPE was approached by the producer for grand right licenses. EPE advised Carlin that EPE would be handling the licenses directly since Carlin did not have the right to license grand rights. Nevertheless, Carlin proceeded to negotiate with the producers of "This Is Elvis" and only ceased doing so after EPE's continued insistence.

### K.   Carlin's violation of the 1992 Settlement Agreement – Copyright Reversion

72.   Pursuant to the 1992 Settlement Agreement, Carlin's administration of the *Gladys/EPM Catalog* included musical compositions for which Presley is a co-author, including *inter alia*: *"All Shook Up," "Don't Be Cruel," and "Love Me Tender"*.

73.   Upon information and belief, various territories around the world, including the United Kingdom, abide by, or have modeled their own laws after, the British Copyright Act of 1911 and/or the British Copyright Act of 1957 (hereinafter, the "British Reversionary Territories").

74.   Upon information and belief, pursuant to Section 5 of the British Copyright Act of 1911, musical compositions which Presley authored and assigned to EPM prior to June 1, 1957 (the "Reverted Compositions") automatically reverted to Presley's "personal representatives" on August 16, 2002, twenty-five (25) years after Presley's death.

21

*75.*    Upon reversion, the portions of such Reverted Compositions that were written by Presley are no longer part of the *Gladys/EPM Catalog*.

*76.*    Upon information and belief, Carlin has been exploiting the foreign copyrights in Reverted Copyrights in the British Reversionary Territories.

*77.*    On December 1, 2005, EPE's former administrator, Chrysalis Music Group USA, notified Carlin in writing that the Reverted Copyrights were no longer in the *Gladys/EPM Catalog*, and that Carlin had no rights to continue to exploit such compositions.

*78.*    On December 5, 2005, Carlin responded via electronic mail, contesting the reversion. Carlin urged that because the 1992 Settlement Agreement was signed by the Elvis Presley Residuary Trust, and was not expressly limited to EPM, the 1992 Settlement Agreement granted Presley's authorship rights to Carlin.

*79.*    The 1992 Settlement Agreement did not assign the reversion rights to Carlin.

*80.*    The 1992 Settlement Agreement does not refer to authorship rights, or rights of authors.

*81.*    The Elvis Presley Residuary Trust executed the 1992 Settlement Agreement only in its capacity as co-owners of the *Gladys/EPM Catalog* and not as the personal legal representatives of Presley – or any other authors.

**IV.    The *White Haven/Elvis Music Catalog***

**A.    Formation and Ownership of White Haven and Elvis Music**

*82.*    Both White Haven and Elvis Music were incorporated in 1973. White Haven and Elvis Music were established and organized by Parker and Bienstock to own and

22

administer those musical compositions written and/or to be recorded by Presley <u>after</u> the dissolution of EPM and Gladys.  None of the compositions owned by White Haven or Elvis Music were ever a part of the *Gladys/EPM Catalog*.

*83.*   In a memo dated July 16, 1973, a copy of which was sent to Bienstock, Parker advised Presley that Bienstock should be charged with running White Haven and Elvis Music:

> *"All your friends can take advantage of this, as we will treat them all the same when you refer them to your General Manager, Mr. Freddy Bienstock, with - their music, for the proper documentation of their songs into your firms -- all neat, legal and honest.*
>
> \* \* \*
>
> *When anyone approaches you, you have a very easy and proper way out -- "See Mr. Bienstock.  He handles my music firms. I do the singing and selecting.  You make your music deal with him for the songs.  I do not wish to discuss music business; only listen to the songs to see if they are what I want to do."*

*84.*   A copy of the July 16, 1973 memo is attached hereto as Exhibit 4.

*85.*    Upon information and belief, White Haven and Elvis Music were owned, *inter alia*, by Presley and Bienstock.

*86.*   After Presley's death in 1977, Presley's rights and interests in the White Haven and Elvis Music were bequeathed to the Elvis Presley Residuary Trust.

*87.*   In the early 1980's Parker assigned his interests in White Haven and Elvis Music to the Elvis Presley Residuary Trust.

23

*88.*    In 1993, the Elvis Presley Residuary Trust assigned to the Promenade Trust, *inter alia*, all of its rights in and interests to White Haven and Elvis Music.

*89.*    In 2005, the Promenade Trust conveyed all of its rights in an interest to White Haven and Elvis Music to plaintiff EPE.

*90.*    EPE now owns seventy five percent (75%) of White Haven and Elvis Music.  The remaining shares of White Haven and Elvis Music are owned by Bienstock 10%, Yanique Diskin (the daughter of Parker's assistant Thomas Diskin) 10%, and Priscilla Presley 5%.

*91.*    Upon information and belief, Bienstock has owned ten percent (10%) of White Haven and Elvis Music since they were founded.

*92.*    Upon information and belief, Bienstock was the corporate secretary of both White Haven and Elvis Music from their formation until August 31, 2005.   Relevant compositions from the *White Haven/Elvis Music Catalog* are listed in the chart at Exhibit 5.

**B.**    **Administration of White Haven and Elvis Music by Carlin**

*93.*    Although the putative purpose of incorporating White Haven and Elvis Music was to act as music publishing companies and administer new musical compositions, upon information and belief, at Bienstock's direction, both entered into sub-publishing contracts with Carlin and wholly owned subsidiaries of Carlin.

*94.*    In 1973, both White Haven and Elvis Music entered into two (2) agreements with Carlin (the "1973 Contracts") and two (2) agreements with Carlin's wholly owned

24

subsidiaries, Hudson Bay Music Company ("Hudson Bay") and Yellow Dog Music, Inc. ("Yellow Dog") (the "1973 Royalty Assignments").

95.    **The 1973 Contracts**.  On or about June 1, 1973 White Haven and Elvis Music entered into sub-publishing agreements with Carlin, copies of which are attached hereto as Exhibits 6 and 7.  These sub-publishing agreements transferred to Carlin for the world, excluding the United States and Canada, the copyrights in all musical compositions, then owned or later acquired that are part of the *White Haven/Elvis Music Catalog*.  In return, Carlin was to administer the *White Haven/Elvis Music Catalog* and pay to White Haven and Elvis Music fifty percent (50%) of all sums generated, at the source.

96.    **The 1973 Royalty Assignments**.  On or about July 1, 1973 White Haven and Elvis Music entered into another set of agreements with Carlin's wholly owned subsidiaries, Hudson Bay and Yellow Dog, copies of which are attached hereto as Exhibits 8 and 9.  These agreements required Hudson Bay (with respect to Elvis Music) and Yellow Dog (with respect to White Haven) to incorporate, and maintain for five (5) years the offices of White Haven and Elvis.   In exchange for the five (5) year commitments by Hudson Bay and Yellow Dog, Hudson Bay and Yellow Dog received a ten percent (10%) royalty interest, **for the life of the copyrights**, for all exploitation of the compositions in the *White Haven/Elvis Music Catalog*.  This was in addition to the ten percent (10%) ownership interest Bienstock maintained in White Haven and Elvis Music.

97.    Upon information and belief, subsequent to 1973, Carlin entered into a series of sub-publishing agreements with respect to the *White Haven/Elvis Music Catalog* with its

25

wholly owned subsidiaries and related companies located throughout the world.  Upon information and belief, these sub-publishing agreements allow third parties to administer the *White Haven/Elvis Music Catalog*, and extract a fee for such administration.  Upon information and belief, it is through these relationships that Carlin has engaged in a pattern of self dealing, retained additional and excessive administration fees and deprived White Haven and Elvis Music of their proper income.

*98.*    The 1973 Contracts require that White Haven and Elvis Music be paid fifty percent of all money generated by the foreign exploitation of the compositions in the *White Haven/Elvis Music Catalog*.  Paragraph 12 of each of the 1973 Contracts requires that all calculations be made "at the source".  This means for example, that if a composition in the *White Haven/Elvis Music Catalog* is licensed for $1,000.00, White Haven or Elvis Music should receive $500.00.

*99.*    Carlin has not abided by the requirement that White Haven and Elvis Music receive fifty percent (50%) of all monies generated.  To the contrary, White Haven and Elvis Music never receive the fifty percent that they are allotted under the 1973 Contracts.

*100.*    By virtue of the foregoing sub-publishing agreements and systematic self dealing, Carlin substantially dilutes the amounts the share of income to White Haven and Elvis Music.  For example, by virtue of the a sub-publishing agreements, a Carlin affiliated sub-publisher deducts a fifty percent (50%) administration fee from the foreign earnings of the *White Haven/Elvis Music Catalog* and then reports the remaining income to Carlin, which in turn deducts a fifty percent (50%) fee from such earnings before reporting to

26

White Haven and Elvis Music.  Prior to the distribution of such earnings to White Haven or Elvis Music, Carlin deducts for Hudson Bay and Yellow Dog another ten percent (10%) fee, pursuant to the 1973 Royalty Assignments.  This means that for a $1,000.00 license, White Have and/or Elvis Music receive $200.00 instead of $500.00.

*101.*    Carlin's conduct above violates the 1973 Contracts.  Specifically, rather than receiving a royalty of fifty percent (50%) of all sums generated, White Haven and Elvis Music always receive less than fifty percent (50%) generated.

*102.*    Figure 1 below details this administration and the way that income is distributed under the 1973 Contracts.

## FIGURE 1



### C.    Carlin's Violation of the 1973 Contracts – Improper Administration

27

*103.* Starting in 2003, plaintiffs commenced a review of the documents and files regarding Carlin's and its subsidiaries' administration of the *White Haven/Elvis Music Catalog.*

*104.* Despite the various administration agreements executed by Carlin and its subsidiaries and Carlin's obligations to properly administer the *White Haven/Elvis Music Catalog* pursuant to the 1973 Contracts, the corporate records and administration of both corporations was in total disarray.

*105.* Despite repeated requests, Carlin has not provided White Haven or Elvis Music with a comprehensive list of musical compositions in the *White Haven/Elvis Music Catalog.* Indeed, each list provided by Carlin commingled compositions in the *White Haven/Elvis Music Catalog* with musical compositions in the *Gladys/EPM Catalog.*

*106.* Furthermore, Carlin has failed to maintain records and files of the sub-publishers for the *White Haven/Elvis Music Catalog,* and refused to provide the terms of such sub-publishing agreements to plaintiffs. Subsequent efforts to secure this information from Carlin proved largely unsuccessful.

*107.* Upon information and belief, Carlin has failed to properly register certain musical compositions in the *White Haven/Elvis Music Catalog* with ASCAP and BMI.

*108.* In an e-mail dated October 17, 2005, Phillip Gunnels, writing on behalf of Carlin, admitted that Carlin had not been sending royalty statements to either Elvis Music or White Haven. A copy of that e-mail is attached as Exhibit 10.

*109.*    Carlin has failed to properly report and account for royalties under the 1973 Contracts.

**D.      Carlin's Violation of the 1973 Contracts – Pervasive Self Dealing**

*110.*    Carlin has engaged in a systemic pattern of self dealing, at the expense of White Haven and Elvis Music.  This self dealing is a material breach of Carlin's obligations under the 1973 Contracts and results in a wholesale failure by Carlin to fulfill its obligation to properly administer the *White Haven/Elvis Music Catalog.*

*111.*    Upon information and belief, Carlin has entered into a variety of relationships with wholly owned, partially owned, and related sub-publishers (the "sub-publishers"). Upon information and belief, these relationships have resulted in the improper retention by Carlin, and Carlin's subsidiaries, of income due White Haven and Elvis Music.

*112.*    Upon information and belief, for exploitation outside of the United Kingdom, Carlin "pays" the Carlin-affiliated sub-publishers a fee, thereby reducing the total fee that it splits with White Haven and Elvis Music.

*113.*    In a letter, dated January 12, 2006, Carlin admitted to plaintiffs that it deducts from the amount it reports to White Haven and Elvis Music the fees taken by its wholly owned subsidiaries.  Indeed, Carlin concedes that rather than paying White Haven and Elvis Music fifty percent (50%) of the income generated with respect to the exploitation of the *White Haven/Elvis Music Catalog* as required under the 1973 Contracts, Carlin instead pays to White Haven and Elvis Music fifty percent (50%) of the money that it

29

receives, which is diluted by the fact that a Carlin subpublisher is extracting fifty percent (50%) off the top prior to Carlin receiving any monies.

*114.* This means by way of example without limitation, that in the example in Figure 1, above, although Carlin is contractually obligated to pay White Haven and Elvis Music fifty percent (50%) of amounts generated - $1,000.00 – even in cases where it is fully accounting for all exploitation, it pays White Haven and Elvis Music much less – only $400.00.  Further, in many cases such as the situation in Figure 1 above, where the sub-licensee is Carlin's subsidiary or affiliate, Carlin is receiving $1,600.00.

*115.* Clearly, through all of these abuses by Carlin overseas, it is clear that Carlin's subsidiaries in the United States that are contractually obligated to White Haven and Elvis Music to administer the royalties by Carlin's foreign subsidiaries, have not engaged in such administration.

*116.* Upon information and belief, Carlin's methodical self-dealing with its foreign sub-publishers is not Carlin's only failed administration.

*117.* Upon information and belief, Carlin entered into sub-publishing arrangements with third parties, including Artemis Publishing, who have improperly administered the *White Haven/Elvis Music Catalog.*  Upon information and belief, some of these third parties, including Artemis, extract an inappropriately high fee and fail to properly account to Carlin.  Upon information and belief, Carlin is aware of these failures, including the failures by Artemis.  Nonetheless, rather than appoint new administrators or terminate the

relationship with Artimis, Carlin has continued to enter into and renew existing exclusive relationships with these third parties including Artemis.

*118.* Carlin has failed to properly administer the *White Haven and Elvis Music Catalog.*

## V.   Causes of Action

### As And For A First Cause of Action:
### Breach of the 1992 Settlement Agreement (The *Gladys/EPM Catalog*)

*119.* To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*120.* This cause of action arises under the laws of the State of New York.

*121.* This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

*122.* By virtue of the acts alleged herein, Carlin has materially breached the 1992 Settlement Agreement.

*123.* Upon information and belief, Carlin will continue to breach the 1992 Settlement Agreement.

*124.* Upon information and belief, EPE will continue to be harmed by Carlin's conduct unless there is Court intervention.

*125.* Upon information and belief, Carlin's conduct has been of a nature that undercuts the fundamental purpose of the 1992 Settlement Agreement.

31

**As And For A Second Cause of Action:**
**Breach of the 1973 Contracts (The *White Haven/Elvis Music Catalog*)**

*126.*    To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*127.*    This cause of action arises under the laws of the State of New York.

*128.*    This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

*129.*    By virtue of the acts alleged herein, Carlin has materially breached the 1973 Contracts.

*130.*    Upon information and belief, Carlin will continue to breach the 1973 Contracts.

*131.*    Upon information and belief, plaintiffs will continue to be harmed by Carlin's conduct unless there is Court intervention.

*132.*    Upon information and belief, Carlin's conduct has been of a nature that undercuts the fundamental purpose of the 1973 Contracts.


**As And For A Third Cause of Action:**
**Declaratory Judgment That the 1992 Settlement Agreement Is Terminated**

*133.*    To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein..

*134.*    This cause of action arises under the laws of the State of New York

*135.*    This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1367 and 2201.

*136.*    The 1992 Settlement Agreement can be terminated by EPE for any of various reasons, including, *inter alia*, for a material breach of contract by Carlin.

32

*137.*    By Carlin's admission, it has never accounted properly, and in many cases solely as a result of self dealing.

*138.*    Carlin still has not remedied its accountings, or under payments.

*139.*    Carlin continues to authorize uses that it is not permitted to under the 1992 Settlement Agreement.

*140.*    It is EPE's position that by virtue of the foregoing, the 1992 Settlement Agreement has been terminated.

*141.*    Carlin contends that the 1992 Settlement Agreement is in full force and effect.

*142.*    By virtue of the foregoing an actual case or controversy exists as to whether the 1992 Settlement Agreement has been terminated.

*143.*    EPE is entitled to a declaration that the 1992 Settlement Agreement is terminated.

### As And For A Fourth Cause of Action:<br>Foreign Copyright Infringement – Grand Rights

*144.*    To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*145.*    The United States has entered into international copyright relations with various countries around the world, including through the Universal Copyright Convention and the Berne Convention.

*146.*    This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

*147.*    Upon information and belief, Carlin has asserted that it owns the grand performance rights to the compositions contained in the *Gladys/EPM Catalog* and the *White Haven/Elvis Music Catalog.*

33

*148.*   Upon information and belief, Carlin has licensed to third parties, grand performance rights to the compositions contained in the *Gladys/EPM Catalog* and the *White Haven/Elvis Music Catalog*.

*149.*   Upon information and belief, Carlin has interfered with EPE's rights to authorize third parties to utilize the compositions contained in the *Gladys/EPM Catalog* and the *White Haven/Elvis Music Catalog*.

*150.*   Upon information and belief, by reason of the foregoing, Carlin has infringed the foreign territorial copyrights in all areas where such conduct has occurred.

*151.*   Upon information and belief, the infringing acts of Carlin are, and if continued hereafter will continue to be, committed willfully.

*152.*   Upon information and belief, Carlin will continue to engage in foreign copyright infringement unless enjoined by this Court.

*153.*   Upon information and belief, plaintiffs will continue to be harmed by Carlin's conduct unless there is Court intervention.

### As And For A Fifth Cause of Action:
### Foreign Copyright Infringement – Reversion Rights

*154.*   To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*155.*   The United States has entered into international copyright relations with various countries around the world, including through the Universal Copyright Convention and the Berne Convention.

*156.*   This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

34

*157.*   Pursuant to Section 5 of the British Copyright Act of 1911, works created prior to June 1, 1957 automatically revert to the author's heirs, successors, or legal representatives 25 years after the death of the author.

*158.*   Pursuant to 1988 U.K. Copyright, Designs and Patents Act, Schedule I at Section 27, Section 5 of the British Copyright Act of 1911 remains in full force and effect.

*159.*   Upon information and belief, similar laws exist in the British Reversionary Territories.

*160.*   Presley was an author of various compositions in the *Gladys/EPM Catalog* which were created and assigned prior to June 1, 1957, including, *inter alia*: *"All Shook Up,"* *"Don't Be Cruel,"* and *"Love Me Tender"*.  A list of relevant compositions authored by Presley and assigned prior to June 1, 1957 are included at Exhibit 11.

*161.*   By virtue of Presley's authorship, the compositions listed in the foregoing paragraph reverted to EPE (the "Reverted Copyrights") in 2002.

*162.*   Upon information and belief, Carlin has been exploiting the foreign copyrights in Reverted Copyrights in one or more of the British Reversionary Territories, including, *inter alia*, the United Kingdom.

*163.*   Upon information and belief, the infringing acts of Carlin are, and if continued hereafter will continue to be, committed willfully.

*164.*   Upon information and belief, Carlin will continue to engage in foreign copyright infringement unless enjoined by this Court.

*165.*   Upon information and belief, plaintiffs will continue to be harmed by Carlin's conduct unless there is Court intervention.

35

**As And For A Sixth Cause of Action:**
**Breach of Fiduciary Duty**

*166.*   To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*167.*   This cause of action arises under the laws of the State of New York

*168.*   This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

*169.*   Commencing in the 1950's Elvis Presley, and then plaintiffs in Presley's place and stead, had numerous business dealings with Carlin and Freddie Bienstock. For the next fifty (50) years, Presley and plaintiffs have had a special relationship with Carlin and its owner, Freddie Bienstock. To this day, Presley's likeness adorns Carlin's web-site. Carlin's web-site explains that its success commenced with Presley, and it gives itself credit for Presley's recording of *A Little Less Conversation* reaching the top of the UK charts just a few years ago.

*170.*   At his manager's urging, Presley entrusted his business to Freddie Bienstock.

*171.*   From the 1970's through today, Freddie Bienstock has been a corporate officer, director and shareholder of Elvis Music and White Haven.

*172.*   Even after Presley's remarkable success, Presley and then plaintiffs continued to rely on Carlin and Freddie Bienstock to ensure that the compositions at issue herein were properly administered and ensure that Presley and then plaintiffs would receive the benefit of the bargains from the contracts and relationships initiated more than thirty (30) years ago.

*173.*   Upon information and belief, Carlin's self dealing, transfer of responsibilities and rights to unreliable third parties, and failure to properly administer the compositions at

36

issue herein has significantly depleted the income that plaintiffs would otherwise be entitled to receive.

*174.*    As the administrator of plaintiffs' intellectual property, Carlin has a fiduciary relationship with plaintiffs.

*175.*    Carlin has breached its fiduciary duty to plaintiffs.

**As And For A Seventh Cause of Action:**
**<u>Copyright Infringement</u>**

*176.*    To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*177.*    This claim arises under 17 U.S.C. § 101 et seq.

*178.*    Subject matter jurisdiction for this claim is based on 28 U.S.C. §§ 1331 and 1338.

*179.*    Plaintiffs are the owners of the compositions in the *Gladys/EPM Catalog* and the *White Haven/Elvis Music Catalog.*

*180.*    Upon information and belief Carlin has interfered with plaintiffs' rights to license the compositions *Gladys/EPM Catalog* and the *White Haven/Elvis Music Catalog,* including, *inter alia,* the right to authorize the worldwide rights to *All Shook Up.*

*181.*    Upon information and belief, Carlin's conduct has violated plaintiffs' right to authorize others to create one or more derivative works based upon and/or publicly perform the *Gladys/EPM Catalog and White Haven//Elvis Music Catalog.*

*182.*    Upon information and belief, Carlin's copyright infringement has been wanton and willful.

*183.*    Plaintiff have been harmed by Carlin's continued infringement and abridgment of the copyrights in and to the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog.*

37

*184.*    Upon information and belief, Carlin is likely to continue infringing the copyrights in and to the *Gladys/EPM Catalog and White Haven//Elvis Music Catalog* unless it is enjoined from further infringement.

### As And For an Eighth Cause of Action:
### <u>Unfair Competition under the Lanham Act</u>

*185.*    To the extent applicable, plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

*186.*    This claim arises under 15 U.S.C. § 101 et seq.

*187.*    Subject matter jurisdiction for this claim is based on 28 U.S.C. §§ 1331 and 1338.

*188.*    Upon information and belief, Carlin, in connection with the goods and services of copyright licensing, have made false and misleading descriptions of fact in order to convince third parties to pay it a royalty fee and/or other payments for licensing the compositions in the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog.*

*189.*    Upon information and belief, Carlin has represented to the public that it is the source of services related to the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog*, including the representation that it owns certain rights, including grand performance rights.

*190.*    Upon information and belief, Carlin has made such representations in interstate commerce.

*191.*    Carlin does not own grand performance rights in connection with the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog.*

NEWYORK01 1161805v2 034078-000016

*192.*    Upon information and belief, Carlin's conduct complained of above has confused third parties as to the proper owner of the grand performance rights in connection with the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog*.

*193.*    Upon information and belief, Carlin's conduct complained of above has confused third parties as to the nature of plaintiffs' commercial activities.

*194.*    Upon information and belief, Carlin's false and/or misleading statements and misrepresentations have, in promoting the services of licensing, misrepresented the nature, characteristics, and qualities of the license plaintiffs seeks to issue and/or have issued for the *Gladys/EPM Catalog* and *White Haven//Elvis Music Catalog*.

*195.*    Upon information and belief, Carlin's representations have caused damage to plaintiffs' reputation and commercial activities.

*196.*    Upon information and belief, Carlin will continue to engage in unfair competition unless enjoined by this Court.

*197.*    Upon information and belief, plaintiffs will continue to be harmed by Carlin's conduct unless there is Court intervention.

## Prayer for Relief

**WHEREFORE**, Plaintiffs pray for relief and respectfully request that the Court:

a)  enjoin Carlin, its agents, servants, employees, and affiliates from:

(1) Interfering with and/or infringing the copyrights to the musical compositions in the *Gladys/EPM Catalog* and the *White Haven//Elvis Music Catalog*;

39

(2) Licensing the musical compositions in the *Gladys/EPM Catalog* and the *White Haven//Elvis Music Catalog* to third parties;

(3) Representing to third parties that they own the copyrights to the musical compositions in the *Gladys/EPM Catalog* and the *White Haven//Elvis Music Catalog*; and

(4) Collecting any royalties, payments, or any other moneys for the use or other exploitation of the musical compositions in the *Gladys/EPM Catalog* and the *White Haven//Elvis Music Catalog*; and

b)  Award to plaintiffs:

    (1)  actual damages or statutory pursuant to 17 U.S.C. § 504;

    (2)  full costs for this action, including reasonable attorney fees;

    (3)  damages sufficient to compensate EPE for Carlin's unfair competition;

    (4)  damages sufficient to compensate EPE for Carlin's breach of contract and breach of the implied covenant of good faith and fair dealing;

    (5)  damages sufficient to compensate EPE for Carlin's breach of fiduciary duty;

    (6)  prejudgment and post judgment interest on all sums; and

    (7)  An exemplary fee in punitive damages.

c)  Declare that the 1992 Settlement Agreement has been materially breached and terminated;

d)  Declare that the 1973 Contracts have been materially breached and terminated;

e)  Award Plaintiffs damages for Carlin's breaches of the 1992 Settlement Agreement;

40

f)   Award Plaintiffs damages for Carlin's breaches of the 1973 Contracts;

g)   Declare that Carlin is merely the alter ego of Freddie Bienstock, and pierce the

corporate veil against Carlin; and

h)   Award plaintiffs any further relief as justice may require, or as this Court deems

necessary.

### DEMAND FOR JURY TRIAL

Plaintiffs Elvis Presley Enterprises, LLC, Elvis Music Inc., and White Haven Music, Inc.,

hereby request a jury trial for all claims as provided for in Federal Rule of Civil Procedure 38.

Respectfully Submitted,

**TROUTMAN SANDERS LLP**

**Dated:**   January 16, 2007          By: _____
             New York, New York              David J. Sheehan (DS 4818)
                                             Oren J. Warshavsky (OW 9469)
                                             Richard G. Cushing (RC 7505)
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, New York  10174
                                        Telephone: (212) 704.6200
                                        Facsimile: (212) 704.8356
                                        e-mail: Oren.Warshavsky@troutmansanders.com

*Attorneys for Plaintiffs*

41

# Exhibit 1

| TITLE | WRITERS | year registered | renewal date 1st January | |
|-------|---------|-----------------|--------------------------|--|
| **GLADYS MUSIC WORKS** | | | | |
| | | | | |
| GAZZA AND FRIENDS MEDLEY | VARIOUS WRITERS | 1956 | 1985 | |
| I WANT YOU, I NEED YOU, I LOVE YOU | MYSELS/KOSLOFF | 1956 | 1985 | |
| (LET ME BE YOUR) TEDDY BEAR | LOWE/MANN | 1957 | 1986 | |
| (LET'S HAVE A) PARTY | ROBINSON | 1957 | 1986 | |
| (YOU'RE SO SQUARE) BABY DON'T CARE | LEIBER/STOLLER | 1957 | 1986 | |
| DANCING ON A DARE | THOMAS/WISE | 1957 | 1986 | |
| FABULOUS | LOWE/MANN | 1957 | 1986 | |
| JAILHOUSE ROCK | LEIBER/STOLLER | 1957 | 1986 | |
| JE T'AIME MON TEDDY BEAR | GAINSBOURG/LOWE/MANN | 1957 | 1986 | |
| LONESOME COWBOY | BENNETT/TEPPER | 1957 | 1986 | |
| MEAN WOMAN BLUES | DE METRUIS | 1957 | 1986 | |
| ONE MORE DAY | BENNETT/TEPPER | 1957 | 1986 | |
| SANTA BRING MY BABY BACK (TO ME) | DE METRUIS/SCHROEDER | 1957 | 1986 | |
| BANANA | BENNETT/TEPPER | 1958 | 1987 | |
| BOTTOM OF THE BARREL | BENNETT/TEPPER | 1958 | 1987 | |
| DIXIELAND ROCK | FRANK/SCHROEDER | 1958 | 1987 | |
| HARD HEADED WOMAN | DE METRUIS | 1958 | 1987 | |
| I GOT STUNG | HILL/SCHROEDER | 1958 | 1987 | |
| LOVER DOLL | WAYNE/SILVER | 1958 | 1987 | |
| NEW ORLEANS | BENNETT/TEPPER | 1958 | 1987 | |
| TROUBLE | LEIBER/STOLLER | 1958 | 1987 | |
| I GOTTA KNOW | WILLIAMS/EVANS | 1959 | 1988 | |
| I NEED YOUR LOVE TONIGHT | WAYNE/REICHNER | 1959 | 1988 | |
| MORNING PAPERS, THE | TEPPER/BENNETT | 1959 | 1988 | |
| BIG BOOTS | WAYNE/EDWARDS | 1960 | 1989 | |
| DIDJ'A EVER | WAYNE/EDWARDS | 1960 | 1989 | |
| FAME AND FORTUNE | WISE/WEISMAN | 1960 | 1989 | |
| FRANKFORT SPECIAL | WAYNE/EDWARDS | 1960 | 1989 | |
| G I BLUES   (MOTION PICTURE) | LILLEY | 1960 | 1989 | |
| G.I. BLUES | BENNETT/TEPPER | 1960 | 1989 | |
| IT'S NOW OR NEVER | SCHROEDER/DI CAPUA/GOLD | 1960 | 1989 | |
| LULLABY FOR LOVERS | KAEMPFERT | 1960 | 1989 | |
| POCKETFUL OF RAINBOWS | WISE/WEISMAN | 1960 | 1989 | |
| STUCK ON YOU | SCHROEDER/MCFARLAND | 1960 | 1989 | |
| TONIGHT IS SO RIGHT FOR LOVE | WAYNE/SILVER | 1960 | 1989 | |
| WHAT'S SHE REALLY LIKE | WAYNE/SILVER | 1960 | 1989 | |
| WILD IN THE COUNTRY | PERETTI/CREATORE/WEISS | 1960 | 1989 | |
| WOODEN HEART | TWOMEY/KAEMPFERT/WISE/WEISM | 1960 | 1989 | |
| A CANE AND A HIGH STARCH COLLAR | BENNETT/TEPPER | 1961 | 1990 | |
| ALMOST ALWAYS TRUE | WISE/WEISMAN | 1961 | 1990 | |
| BEACH BOY BLUES | BENNETT/TEPPER | 1961 | 1990 | |
| CAN'T HELP FALLING IN LOVE | WEISS/PERETTI/CREATORE | 1961 | 1990 | |
| FLAMING STAR | WAYNE/EDWARDS | 1961 | 1990 | |
| GIVE ME THE RIGHT | WISE/BLAGMAN | 1961 | 1990 | |
| HAWAIIAN SUNSET | BENNETT/TEPPER | 1961 | 1990 | |
| I SLIPPED I STUMBLED I FELL | WISE/WEISMAN | 1961 | 1990 | |
| I'M YOURS | ROBERTSON/BLAIR | 1961 | 1990 | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| **GLADYS MUSIC WORKS** continued | | | | |
| IN MY WAY | WISE/WEISMAN | 1961 | 1990 | |
| IN YOUR ARMS | GOLD/SCHROEDER | 1961 | 1990 | |
| ISLAND OF LOVE | BENNETT/TEPPER | 1961 | 1990 | |
| IT WON'T BE ME | WISE/WEISMAN | 1961 | 1990 | |
| KU-U-I-PO | WEISS/PERETTI/CREATORE | 1961 | 1990 | |
| LONELY MAN | BENJAMIN/MARCUS | 1961 | 1990 | |
| NO MORE | ROBERTSON/BLAIR | 1961 | 1990 | |
| PUT THE BLAME ON ME | TWOMEY/BLAGMAN/WISE | 1961 | 1990 | |
| REAL GOOD LOOKING BOY | WEISS/CREATORE/PERETTI/TOWNSH | 1961 | 1990 | |
| ROCK-A-HULA BABY | FULLER/WISE/WEISMAN | 1961 | 1990 | |
| SLICIN' SAND | BENNETT/TEPPER | 1961 | 1990 | |
| STARTING TODAY | ROBERTSON | 1961 | 1990 | |
| SUMMER KISSES, WINTER TEARS | LLOYD/WISE/WEISMAN | 1961 | 1990 | |
| THERE'S ALWAYS ME | ROBERTSON | 1961 | 1990 | |
| A BOY LIKE ME, A GIRL LIKE YOU | BENNETT/TEPPER | 1962 | 1991 | |
| A WHISTLIN' TUNE | EDWARDS/DAVID | 1962 | 1991 | |
| ANGEL | BENNETT/TEPPER | 1962 | 1991 | |
| ANYTHING THAT'S PART OF YOU | ROBERTSON | 1962 | 1991 | |
| EARTH BOY | BENNETT/TEPPER | 1962 | 1991 | |
| FOLLOW THAT DREAM | WISE/WEISMAN | 1962 | 1991 | |
| FOR THE MILLIONTH AND THE LAST TIME | BENNETT/TEPPER | 1962 | 1991 | |
| GOOD LUCK CHARM | GOLD/SCHROEDER | 1962 | 1991 | |
| HOME IS WHERE THE HEART IS | EDWARDS/DAVID | 1962 | 1991 | |
| I DON'T WANT TO | TORRE/SPIELMAN | 1962 | 1991 | |
| I GOT LUCKY | FULLER/WISE/WEISMAN | 1962 | 1991 | |
| I MET HER TODAY | ROBERTSON/BLAIR | 1962 | 1991 | |
| I'M NOT THE MARRYING KIND | EDWARDS/DAVID | 1962 | 1991 | |
| JUST FOR OLD TIME'S SAKE | BENNETT/TEPPER | 1962 | 1991 | |
| MAMA | BROOKS/O'CURRAN | 1962 | 1991 | |
| NEVER-ENDING | KAYE/SPRINGER | 1962 | 1991 | |
| RIDIN' THE RAINBOW | WISE/WEISMAN | 1962 | 1991 | |
| SONG OF THE SHRIMP | BENNETT/TEPPER | 1962 | 1991 | |
| STEPPIN' OUT OF LINE | FULLER/WISE/WEISMAN | 1962 | 1991 | |
| THE WALLS HAVE EARS | BENNETT/TEPPER | 1962 | 1991 | |
| THIS IS LIVING | WISE/WEISMAN | 1962 | 1991 | |
| WE'LL BE TOGETHER | O'CURRAN/BROOKS | 1962 | 1991 | |
| WE'LL GET TOGETHER | O'CURRAN/BROOKS | 1962 | 1991 | |
| WHAT A WONDERFUL LIFE | WAYNE/LIVINGSTON | 1962 | 1991 | |
| (THERE'S) NO ROOM TO RHUMBA (IN A SPORTS | MANNING/WISE | 1963 | 1992 | |
| BEYOND THE BEND | EDWARDS/WAYNE | 1963 | 1992 | |
| FUN IN ACAPULCO | WAYNE/WEISMAN | 1963 | 1992 | |
| FUN IN ACAPULCO    (MOTION PICTURE) | VARIOUS WRITERS | 1963 | 1992 | |
| HAPPY ENDING | WAYNE/WEISMAN | 1963 | 1992 | |
| I THINK I'M GONNA LIKE IT HERE | ROBERTSON/BLAIR | 1963 | 1992 | |
| I'M FALLING IN LOVE TONIGHT | ROBERTSON | 1963 | 1992 | |
| LOVE ME TONIGHT | ROBERTSON | 1963 | 1992 | |
| MARGUERITA | ROBERTSON | 1963 | 1992 | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| **GLADYS MUSIC WORKS continued** | | | | |
| MEXICO | BENNETT/TEPPER | 1963 | 1992 | |
| RELAX | BENNETT/TEPPER | 1963 | 1992 | |
| SLOWLY BUT SURELY | WAYNE/WEISMAN | 1963 | 1992 | |
| TAKE ME TO THE FAIR | BENNETT/TEPPER | 1963 | 1992 | |
| THE BULLFIGHTER WAS A LADY | BENNETT/TEPPER | 1963 | 1992 | |
| THEY REMIND ME TOO MUCH OF YOU | ROBERTSON | 1963 | 1992 | |
| TURTLES, BERRIES AND GUMBO | WOOD/TWOMEY | 1963 | 1992 | |
| VINO, DINERO Y AMOR | BENNETT/TEPPER | 1963 | 1992 | |
| WHAT NOW, WHAT NEXT, WHERE TO | ROBERTSON/BLAIR | 1963 | 1992 | |
| ANYONE   (COULD FALL IN LOVE WITH YOU) | DE JESUS/BENJAMIN/MARCUS | 1964 | 1993 | |
| BAREFOOT BALLAD | FULLER/MORRIS | 1964 | 1993 | |
| BIG LOVE, BIG HEARTACHE | FULLER/HENDRIX/MORRIS | 1964 | 1993 | |
| CARNY TOWN | STARR/WISE | 1964 | 1993 | |
| IT'S A WONDERFUL WORLD | BENNETT/TEPPER | 1964 | 1993 | |
| IT'S CARNIVAL TIME | WAYNE/WEISMAN | 1964 | 1993 | |
| KISSIN' COUSINS | STARR/WISE | 1964 | 1993 | |
| LADY LOVES ME, THE | BENNETT/TEPPER | 1964 | 1993 | |
| ONCE IS ENOUGH | BENNETT/TEPPER | 1964 | 1993 | |
| PAPPY, WON'T YOU PLEASE COME HOME | BENNETT/TEPPER | 1964 | 1993 | |
| VIVA LAS VEGAS | POMUS/SHUMAN | 1964 | 1993 | |
| WHEELS ON MY HEELS | BENNETT/TEPPER | 1964 | 1993 | |
| YELLOW ROSE OF TEXAS | STARR/WISE | 1964 | 1993 | |
| BLUE RIVER | EVANS/TOBIAS | 1965 | 1994 | |
| CROSS MY HEART AND HOPE TO DIE | WAYNE/WEISMAN | 1965 | 1994 | |
| DO THE CLAM | WAYNE/FULLER/WEISMAN | 1965 | 1994 | |
| FORGET ME NEVER | WISE/WEISMAN | 1965 | 1994 | |
| FORT LAUDERDALE CHAMBER OF COMMERCE | BENNETT/TEPPER | 1965 | 1994 | |
| I'VE GOT NEWS FOR YOU | STARR/WISE | 1965 | 1994 | |
| KISMET | BENNETT/TEPPER | 1965 | 1994 | |
| MY DESERT SERENADE | GELBER | 1965 | 1994 | |
| PUPPET ON A STRING | BENNETT/TEPPER | 1965 | 1994 | |
| ADAM AND EVIL | STARR/WISE | 1966 | 1995 | |
| ALL THAT I AM | BENNETT/TEPPER | 1966 | 1995 | |
| AM I READY | BENNETT/TEPPER | 1966 | 1995 | |
| AN OLD ITALIAN LOVE SONG | HARRISON/SOSNICK/KEITHLEY/HIRS | 1966 | 1995 | |
| BEGINNER'S LUCK | BENNETT/TEPPER | 1966 | 1995 | |
| BLUE IN THE BLACK OF THE NIGHT | CAPANO/WELLEIN/MERLAND/PANCO | 1966 | 1995 | |
| BOOK OF HAPPINESS | HOSEY/GORDON | 1966 | 1995 | |
| BROOKLYN | KENNY/SEGAL/SILVER | 1966 | 1995 | |
| CHESAY | KARGER/WAYNE/WEISMAN | 1966 | 1995 | |
| COME ALONG | HESS | 1966 | 1995 | |
| DATIN' | STARR/WISE | 1966 | 1995 | |
| DOG'S LIFE, A | WAYNE/WEISMAN | 1966 | 1995 | |
| DRUMS OF THE ISLANDS | CENTER/BENNETT/TEPPER | 1966 | 1995 | |
| FRANKIE AND JOHNNY | GOTTLIEB/KARGER/WEISMAN | 1966 | 1995 | |
| HARD LUCK | WAYNE/WEISMAN | 1966 | 1995 | |
| HITLER'S FUNERAL MARCH | SILVER/KENNY/KENNY | 1966 | 1995 | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| **GLADYS MUSIC WORKS continued** | | | | |
| I'LL BE BACK | WAYNE/WEISMAN | 1966 | 1995 | |
| I'LL FIND YOU | PANCOAST/EDWARDS/CAPANO/MER | 1966 | 1995 | |
| MON ADORE | FREEMAN/CAPANO/BORSELLI | 1966 | 1995 | |
| NIECES AND NEPHEWS OF UNCLE SAM | SCHROEDER/PAUL | 1966 | 1995 | |
| OH! OH! OH! SUSIE | KENNY/MILTON/SILVER | 1966 | 1995 | |
| PETUNIA, THE GARDENER'S DAUGHTER | BENNETT/TEPPER | 1966 | 1995 | |
| SAND CASTLES | GOLDBERG/HESS | 1966 | 1995 | |
| SMORGASBORD | BENNETT/TEPPER | 1966 | 1995 | |
| SPINOUT | WAYNE/FULLER/WEISMAN | 1966 | 1995 | |
| TEARS ON MY PILLOW | LEWIS/BRADFORD | 1966 | 1995 | |
| CASANOVA BROWN | SILVER/KENNY/KENNY | 1967 | 1996 | |
| CLAMBAKE | WAYNE/WEISMAN | 1967 | 1996 | |
| CONFIDENCE | BENNETT/TEPPER | 1967 | 1996 | |
| COULD I FALL IN LOVE | STARR | 1967 | 1996 | |
| EASY COME, EASY GO | WAYNE/WEISMAN | 1967 | 1996 | |
| ENCHANTING | HIMBER/WILLIAM/GAMSI | 1967 | 1996 | |
| GIRL I NEVER LOVED, THE | STARR | 1967 | 1996 | |
| GOOD LUCK TO YOU | TAUB/RICH/SEYMOUR | 1967 | 1996 | |
| GREEN GREEN HILLS OF HOME | SILVER/KENNY/KENNY | 1967 | 1996 | |
| HOUSE THAT HAS EVERYTHING, A | BENNETT/TEPPER | 1967 | 1996 | |
| I LOVE ONLY ONE GIRL | BENNETT/TEPPER | 1967 | 1996 | |
| I'LL TOUCH A STAR | FULLER/WISE/WEISMAN | 1967 | 1996 | |
| IT WON'T BE LONG | WAYNE/WEISMAN | 1967 | 1996 | |
| ITO EATS | BENNETT/TEPPER | 1967 | 1996 | |
| LET'S STAND BEHIND GREAT BRITAIN | SILVER/CURTIS | 1967 | 1996 | |
| NICKNAMES | KENT/HOFFMAN/KURTZ | 1967 | 1996 | |
| OLD MACDONALD | STARR | 1967 | 1996 | |
| THERE'S A RAY OF SUNSHINE   (JUST A CLO | SILVER/KENNY/KENNY | 1967 | 1996 | |
| THERE'S SO MUCH WORLD TO SEE | WAYNE/WEISMAN | 1967 | 1996 | |
| VIOLINS WERE PLAYING | SILVER/KENNY/KENNY | 1967 | 1996 | |
| WHILE WE'RE DANCING | BENJAMIN/MARCUS | 1967 | 1996 | |
| WHO NEEDS MONEY? | STARR | 1967 | 1996 | |
| A LITTLE LESS CONVERSATION | STRANGE/DAVIS | 1968 | 1997 | |
| ALMOST IN LOVE | STARR/BONFA | 1968 | 1997 | |
| BRIGHT NEW WORLD OF TOMORROW, THE | ROBERTSON/BLAIR | 1968 | 1997 | |
| COME ABOARD | KARGER | 1968 | 1997 | |
| DOMINIC | WAYNE/WEISMAN | 1968 | 1997 | |
| FIVE SLEEPYHEADS | BENNETT/TEPPER | 1968 | 1997 | |
| HE'S YOUR UNCLE NOT YOUR DAD | WAYNE/WEISMAN | 1968 | 1997 | |
| HOW CAN YOU LOSE   (WHAT YOU NEVER HAI | WAYNE/WEISMAN | 1968 | 1997 | |
| IF I CAN DREAM | BROWN | 1968 | 1997 | |
| LOOK OUT, BROADWAY! | STARR/WISE | 1968 | 1997 | |
| MEMORIES | STRANGE/DAVIS | 1968 | 1997 | |
| MINE | BENNETT/TEPPER | 1968 | 1997 | |
| MR. NOBODY | BENNETT/TEPPER | 1968 | 1997 | |
| SPEEDWAY | GLAZER/SCHLAKS | 1968 | 1997 | |
| STAY AWAY | BENNETT/TEPPER | 1968 | 1997 | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| **GLADYS MUSIC WORKS continued** | | | | |
| STAY AWAY, JOE | WAYNE/WEISMAN | 1968 | 1997 | |
| SUPPOSE | GOEHRING/DEE | 1968 | 1997 | |
| WE CALL ON HIM | KARGER/WAYNE/WEISMAN | 1968 | 1997 | |
| WESTERN UNION | BENNETT/TEPPER | 1968 | 1997 | |
| WHO ARE YOU?   (WHO AM I?) | WAYNE/WEISMAN | 1968 | 1997 | |
| YOUR GROOVY SELF | HAZLEWOOD | 1968 | 1997 | |
| ARABIC FIELD | GOLDENBURG | 1969 | 1998 | |
| CALLIOPE CARNIVAL | GOLDENBURG | 1969 | 1998 | |
| CHANGE OF HABIT | WEISMAN/KAYE | 1969 | 1998 | |
| CHARRO | STRANGE/DAVIS | 1969 | 1998 | |
| CHAUTAUQUA MARCH | WEISMAN/KAYE | 1969 | 1998 | |
| GUITAR ROAD | GOLDENBURG | 1969 | 1998 | |
| HAVE A HAPPY | FULLER/WEISMAN/KAYE | 1969 | 1998 | |
| I FOUND THAT LIGHT | BROWN | 1969 | 1998 | |
| LET US PRAY | WEISMAN/KAYE | 1969 | 1998 | |
| NOTHINGVILLE | STRANGE/DAVIS | 1969 | 1998 | |
| PREACH FOR THE SKY | WOLFE | 1969 | 1998 | |
| SIGNS OF THE ZODIAC | WEISMAN/KAYE | 1969 | 1998 | |
| SOMETIMES I FEEL LIKE A MOTHERLESS CHILD | BROWN/FREEMAN | 1969 | 1998 | |
| SOUL SUPPORT | WOLFE | 1969 | 1998 | |
| UP ABOVE MY HEAD | BROWN | 1969 | 1998 | |
| YES YES | BROWN | 1969 | 1998 | |
| ALMOST | WEISMAN/KAYE | 1970 | 1999 | |
| KING CREOLE   (BACKGROUND SCORE) | SCHARF | 1970 | 1999 | |
| NEXT STEP IS LOVE, THE | EVANS/PARNES | 1970 | 1999 | |
| CINDY CINDY | FULLER/WEISMAN/KAYE | 1971 | 2000 | |
| DID YOU DARLING | REEVES | 1971 | 2000 | |
| HILLBILLY WALTZ | REEVES | 1971 | 2000 | |
| I'LL ALWAYS LOVE YOU | REEVES | 1971 | 2000 | |
| I'LL NEVER KNOW | KARGER/WAYNE/WEISMAN | 1971 | 2000 | |
| I'LL TELL THE WORLD I LOVE YOU | REEVES | 1971 | 2000 | |
| ILLUSIONS | MERL/PANCOAST/CAPANO | 1971 | 2000 | |
| NEVER TAKE NO FOR AN ANSWER | REEVES/CUTRER | 1971 | 2000 | |
| PLEASE LEAVE MY DARLING ALONE | REEVES | 1971 | 2000 | |
| SPANISH VIOLINS | REEVES | 1971 | 2000 | |
| WAGON LOAD OF LOVE | REEVES | 1971 | 2000 | |
| YOU'RE THE SWEETEST THING | REEVES | 1971 | 2000 | |
| FOOL | LAST/SIGMAN | 1973 | 2002 | |
| I'LL TAKE YOU HOME AGAIN KATHLEEN | WESTENDORF/PRESLEY | 1975 | 2004 | |
| IT'S STILL HERE | HUNTER | 1975 | 2004 | |
| (Client advised that the copyright date for "It's Still Here" was 1973 and renewal date was therefore 2002) | | | | |
| (However, Carlin applied correct rate of 75% as from 1st half 2002 – note this copyright is split 50/50 with EPM) | | | | |
| ALL I NEEDED WAS THE RAIN | WAYNE/WEISMAN | 1978 | 2007 | |
| (Client advised that the copyright date for "All I Needed Was The Rain" was 1968 and renewal date was therefore 1997) | | | | |
| (However, Carlin applied correct rate of 75% already in 2nd half 1999 and subsequent periods) | | | | |
| BRITCHES | WAYNE/EDWARDS | 1978 | 2007 | |

| TITLE | WRITERS | year registered | renewal date 1st January |
|---|---|---|---|
| **ELVIS PRESLEY MUSIC WORKS** | | | |
| HOW DO YOU THINK I FEEL | WALKER/PIERCE | 1954 | 1983 |
| DON'T BE CRUEL (TO A HEART THAT'S | PRESLEY/BLACKWELL | 1956 | 1985 |
| LOVE ME TENDER | PRESLEY/MATSON | 1956 | 1985 |
| LOVE ME TENDER    (MOTION PICTURE | VARIOUS WRITERS | 1956 | 1985 |
| MY BABY LEFT ME | CRUDUP | 1956 | 1985 |
| PARALYZED | PRESLEY/BLACKWELL | 1956 | 1985 |
| POOR BOY | PRESLEY/MATSON | 1956 | 1985 |
| SO GLAD YOU'RE MINE | CRUDUP | 1956 | 1985 |
| TOO MUCH | ROSENBERG/WEINMAN | 1956 | 1985 |
| ANY PLACE IS PARADISE | THOMAS | 1956 | 1985 |
| GAZZA AND FRIENDS MEDLEY | VARIOUS WRITERS | 1956 | 1985 |
| LAWDY MISS CLAWDY | PRICE | 1956 | 1985 |
| READY TEDDY | BLACKWELL/MARASCALCO | 1956 | 1985 |
| WE'RE GONNA MOVE | PRESLEY/MATSON | 1956 | 1985 |
| BLUES FOR ME | LEIBER/STOLLER | 1957 | 1986 |
| DON'T | LEIBER/STOLLER | 1957 | 1986 |
| HOT DOG | LEIBER/STOLLER | 1957 | 1986 |
| I BEG OF YOU | OWENS/MCCOY | 1957 | 1986 |
| I WANT TO BE FREE | LEIBER/STOLLER | 1957 | 1986 |
| LET ME | PRESLEY/MATSON | 1957 | 1986 |
| LOVING YOU | LEIBER/STOLLER | 1957 | 1986 |
| SANTA CLAUS IS BACK IN TOWN | LEIBER/STOLLER | 1957 | 1986 |
| TREAT ME NICE | LEIBER/STOLLER | 1957 | 1986 |
| WILL YOU LOVE ME STILL | LEIBER/STOLLER | 1957 | 1986 |
| ALL SHOOK UP | PRESLEY/BLACKWELL | 1957 | 1986 |
| PART-TIME GAL | LAND/SHELDON | 1957 | 1986 |
| SWING THE MOOD | VARIOUS WRITERS | 1957 | 1986 |
| THE SPACE JUNGLE | PRESLEY/TINLEY/BLACKWELL | 1957 | 1986 |
| DONCHA' THINK IT'S TIME | OTIS/DIXON | 1958 | 1987 |
| KING CREOLE | LEIBER/STOLLER | 1958 | 1987 |
| STEADFAST, LOYAL AND TRUE | LEIBER/STOLLER | 1958 | 1987 |
| WEAR MY RING AROUND YOUR NECK | MOODY/CARROLL | 1958 | 1987 |
| A MESS OF BLUES | POMUS/SHUMAN | 1958 | 1987 |
| LUST | LIVINGSTON/BURRELL/DENVER/OTI | 1959 | 1988 |
| A BIG HUNK O' LOVE | WYCHE/SCHROEDER | 1959 | 1988 |
| THE GIRL OF MY BEST FRIEND | ROSS/BOBRICK | 1960 | 1989 |
| DIRTY DIRTY FEELIN' | LEIBER/STOLLER | 1960 | 1989 |
| DOIN' THE BEST I CAN | POMUS/SHUMAN | 1960 | 1989 |
| GIRL NEXT DOOR (WENT A WALKIN') | WAYNE/RICE | 1960 | 1989 |
| JOSHUA FIT THE BATTLE | PRESLEY | 1960 | 1989 |
| MAKE ME KNOW IT | BLACKWELL | 1960 | 1989 |
| MILKY WHITE WAY | PRESLEY | 1960 | 1989 |
| SWING DOWN SWEET CHARIOT | PRESLEY | 1960 | 1989 |
| I'M COMIN' HOME | RICH | 1961 | 1990 |
| (MARIE'S THE NAME OF) HIS LATEST FL | POMUS/SHUMAN | 1961 | 1990 |
| GENTLY | WIZELL/LISBONA | | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| **ELVIS PRESLEY MUSIC WORKS continued** | | | | |
| KISS ME QUICK | POMUS/SHUMAN | 1961 | 1990 | |
| LITTLE SISTER | POMUS/SHUMAN | 1961 | 1990 | |
| BECAUSE OF LOVE | ROBERTS/BATCHELOR | 1962 | 1991 | |
| BOSSA NOVA, BABY | LEIBER/STOLLER | 1962 | 1991 | |
| CLIMB, THE | LEIBER/STOLLER | 1962 | 1991 | |
| ECSTASY | SPECTOR/POMUS | 1962 | 1991 | |
| GIRLS, GIRLS, GIRLS | LEIBER/STOLLER | 1962 | 1991 | |
| GONNA GET BACK HOME SOMEHOW | POMUS/SHUMAN | 1962 | 1991 | |
| GONNA GET SOME RECORDS | BATCHELOR/WESTLAKE | 1962 | 1991 | |
| I DON'T WANNA BE TIED | BAUM/GIANT/KAYE | 1962 | 1991 | |
| I FEEL THAT I'VE KNOWN YOU FOREVER | POMUS/JEFFREYS | 1962 | 1991 | |
| JUST TELL HER JIM SAID HELLO | LEIBER/STOLLER | 1962 | 1991 | |
| KING OF THE WHOLE WIDE WORLD | ROBERTS/BATCHELOR | 1962 | 1991 | |
| NIGHT RIDER | POMUS/SHUMAN | 1962 | 1991 | |
| RETURN TO SENDER | BLACKWELL/SCOTT | 1962 | 1991 | |
| SHE'S NOT YOU | LEIBER/STOLLER/POMUS | 1962 | 1991 | |
| SOUND ADVICE | BAUM/GIANT/KAYE | 1962 | 1991 | |
| SUSPICION | POMUS/SHUMAN | 1962 | 1991 | |
| THANKS TO THE ROLLING SEA | ROBERTS/BATCHELOR | 1962 | 1991 | |
| THAT'S SOMEONE YOU NEVER FORGET | WEST/PRESLEY | 1962 | 1991 | |
| WE'RE COMING IN LOADED | BLACKWELL/SCOTT | 1962 | 1991 | |
| WHERE DO YOU COME FROM | ROBERTS/BATCHELOR | 1962 | 1991 | |
| (SUCH AN) EASY QUESTION | BLACKWELL/SCOTT | 1962 | 1991 | |
| (YOU'RE THE) DEVIL IN DISGUISE | BAUM/GIANT/KAYE | 1963 | 1992 | |
| COTTON CANDY LAND | ROBERTS/BATCHELOR | 1963 | 1992 | |
| ECHOES OF LOVE | MCMAINS/ROBERTS | 1963 | 1992 | |
| EL TORO | BAUM/GIANT/KAYE | 1963 | 1992 | |
| FINDERS KEEPERS, LOSERS WEEPERS | JONES/JONES | 1963 | 1992 | |
| HOW WOULD YOU LIKE TO BE | BARKAN/RALEIGH | 1963 | 1992 | |
| IT HURTS ME | BYERS/DANIELS | 1963 | 1992 | |
| ONE BROKEN HEART FOR SALE | BLACKWELL/SCOTT | 1963 | 1992 | |
| PLEASE DON'T DRAG THAT STRING AROUND | BLACKWELL/SCOTT | 1963 | 1992 | |
| A WORLD OF OUR OWN | BAUM/GIANT/KAYE | 1963 | 1992 | |
| YOU CAN'T SAY NO IN ACAPULCO | FULLER/MORRIS/FELLER | 1963 | 1992 | |
| AIN'T THAT LOVING YOU BABY | HUNTER/OTIS | 1964 | 1993 | |
| APPRECIATION | WAYNE/MOORE | 1964 | 1993 | |
| CATCHIN' ON FAST | BAUM/GIANT/KAYE | 1964 | 1993 | |
| C'MON EVERYBODY | BYERS | 1964 | 1993 | |
| HARD KNOCKS | BYERS | 1964 | 1993 | |
| I NEED SOMEBODY TO LEAN ON | POMUS/SHUMAN | 1964 | 1993 | |
| IF YOU THINK I DON'T NEED YOU | COOPER/WEST | 1964 | 1993 | |
| KISSIN' COUSINS (NO 2) | BAUM/GIANT/KAYE | 1964 | 1993 | |
| MY RIVAL | WAYNE/MOORE | 1964 | 1993 | |
| NIGHT LIFE | BAUM/GIANT/KAYE | 1964 | 1993 | |
| ONE BOY TWO LITTLE GIRLS | BAUM/GIANT/KAYE | 1964 | 1993 | |
| ONE TRACK HEART | BAUM/GIANT/KAYE | 1964 | 1993 | |

| TITLE | WRITERS | year registered | renewal date 1st January | |
|---|---|---|---|---|
| | | | | |
| **ELVIS PRESLEY MUSIC WORKS continued** | | | | |
| | | | | |
| POISON IVY LEAGUE | BAUM/GIANT/KAYE | 1964 | 1993 | |
| ROUSTABOUT | BAUM/GIANT/KAYE | 1964 | 1993 | |
| SILENT NIGHT | PRESLEY | 1964 | 1993 | |
| SMOKEY MOUNTAIN BOY | ROSENBLATT/MILLROSE | 1964 | 1993 | |
| STOP, LOOK, LISTEN | BYERS | 1964 | 1993 | |
| TENDER FEELING | BAUM/GIANT/KAYE | 1964 | 1993 | |
| THE MEANEST GIRL IN TOWN | BYERS | 1964 | 1993 | |
| THERE'S A BRAND NEW DAY ON THE HORI | BYERS | 1964 | 1993 | |
| THERE'S GOLD IN THE MOUNTAINS | BAUM/GIANT/KAYE | 1964 | 1993 | |
| TODAY, TOMORROW AND FOREVER | BAUM/GIANT/KAYE | 1964 | 1993 | |
| (IT'S A) LONG, LONELY HIGHWAY | POMUS/SHUMAN | 1964 | 1993 | |
| O LITTLE TOWN OF BETHLEHEM | PRESLEY | 1965 | 1994 | |
| ALOHA OE | PRESLEY/LILIUOKALANI | 1965 | 1994 | |
| ANIMAL INSTINCT | BAUM/GIANT/KAYE | 1965 | 1994 | |
| DO NOT DISTURB | BAUM/GIANT/KAYE | 1965 | 1994 | |
| GOLDEN COINS | BAUM/GIANT/KAYE | 1965 | 1994 | |
| HAREM HOLIDAY | CRANE/ANDREOLI/PONCIA | 1965 | 1994 | |
| HEY LITTLE GIRL | BYERS | 1965 | 1994 | |
| I'VE GOT TO FIND MY BABY | BYERS | 1965 | 1994 | |
| MONEY HONEY | STONE | 1965 | 1994 | |
| SANTA LUCIA | PRESLEY | 1965 | 1994 | |
| SHAKE THAT TAMBOURINE | BAUM/GIANT/KAYE | 1965 | 1994 | |
| SO CLOSE, YET SO FAR | BYERS | 1965 | 1994 | |
| SPRING FEVER | BAUM/GIANT/KAYE | 1965 | 1994 | |
| STARTIN' TONIGHT | ROSENBLATT/MILLROSE | 1965 | 1994 | |
| WISDOM OF THE AGES | BAUM/GIANT/KAYE | 1965 | 1994 | |
| WOLF CALL | BAUM/GIANT/KAYE | 1965 | 1994 | |
| GIRL HAPPY | POMUS/SHUMAN | 1965 | 1994 | |
| GO EAST, YOUNG MAN | BAUM/GIANT/KAYE | 1965 | 1994 | |
| MIRAGE | BAUM/GIANT/KAYE | 1965 | 1994 | |
| YOU'LL BE GONE | PRESLEY/WEST/HODGE | 1966 | 1995 | |
| BEACH SHACK | BAUM/GIANT/KAYE | 1966 | 1995 | |
| DOWN BY THE RIVERSIDE | BAUM/GIANT/KAYE | 1966 | 1995 | |
| EVERYBODY COME ABOARD | BAUM/GIANT/KAYE | 1966 | 1995 | |
| HOUSE OF SAND | BAUM/GIANT/KAYE | 1966 | 1995 | |
| NEVER SAY YES | POMUS/SHUMAN | 1966 | 1995 | |
| PARADISE, HAWAIIAN STYLE | BAUM/GIANT/KAYE | 1966 | 1995 | |
| PLEASE DON'T STOP LOVING ME | BYERS | 1966 | 1995 | |
| QUEENIE WAHINE'S PAPAYA | BAUM/GIANT/KAYE | 1966 | 1995 | |
| SCRATCH MY BACK (THEN I'LL | BAUM/GIANT/KAYE | 1966 | 1995 | |
| SHOUT IT OUT | BAUM/GIANT/KAYE | 1966 | 1995 | |
| STOP WHERE YOU ARE | BAUM/GIANT/KAYE | 1966 | 1995 | |
| THIS IS MY HEAVEN | POMUS/SHUMAN | 1966 | 1995 | |
| WHAT EVERY WOMAN LIVES FOR | BAUM/GIANT/KAYE | 1966 | 1995 | |
| WHEN THE SAINTS GO MARCHING IN | BAUM/GIANT/KAYE | 1966 | 1995 | |
| BABY IF YOU'LL GIVE ME ALL OF YOUR | BYERS | 1967 | 1996 | |